**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Ineka J. Barron,<br><br>        Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>        Defendant. | No. CV-11-2002-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Ineka Barron's appeal of the Social Security Administration's (the "Administration") decision to deny benefits. (Doc. 1). For the reasons set forth below, the Court vacates that decision and remands for a determination of benefits.

## BACKGROUND

### I.   Procedural Background

On February 26, 2008, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of July 1, 2007. (R. at 128–36). Her claim was denied initially and on reconsideration. She was given a hearing on August 11, 2009 before Administrative Law Judge ("ALJ") William Thompson, Jr. (R. at 54–86). On December 14, 2009, the ALJ concluded that Plaintiff was not disabled, and the Appeals Council denied her request for review on August 23, 2011, leaving the ALJ's decision as the Commissioner's final decision. (R. at 26–35, 2–4). Barron then brought this

suit in federal court. (Doc. 1). The appeal is now fully briefed before this Court. (Docs. 21, 24, 25).[1]

## II.   Factual Background

Plaintiff was born on January 31, 1982, and was 25 when she claims to have become disabled and 27 when the ALJ issued his decision. (R. at 128). She has completed the equivalence of a high-school education and is certified as a nursing assistant. (R. at 206). Previously she worked as a waitress, in retail sales at Walmart, and as a nurse assistant. (R. at 61). On her disability report, she reported being disabled due to lupus, bipolar disorder, and depression. (R. at 201).

The ALJ discussed seven medical reports in his finding. Plaintiff was treated by Priti Bhardwaj, M.D., beginning in January 2008. (R. at 299–313). Dr. Bhardwaj diagnosed Plaintiff with lupus, bipolar disorder, depression, and fibromyalgia; he noted that Plaintiff "aches with pain" and "cannot lift anything over five pounds." (R. at 325–26). On June 30, 2008, she was evaluated by Dr. Basivi Baddigam, who concluded that she had Dysthymic disorder and gave a "guarded" prognosis. (R. at 268–70). On July 15, 2008, Dr. Nighet Khan conducted a Mental Residual Functional Capacity Assessment ("MRFCA") and a Psychiatric Review. (R. at 272–290). Dr. Khan concluded that Plaintiff suffered from "dysthymic disorder," that she had moderate difficulties maintaining her concentration, a moderately limited ability to accept instructions, and that she "retains the mental capacity to do simple unskilled tasks with sustainability." (*Id.*). On July 17, 2008, state agency physician William Joh conducted a physical residual functional capacity assessment during which he wrote that Plaintiff could frequently lift ten pounds and occasionally lift twenty pounds. (R. at 292). In support of this conclusion, Dr. Joh wrote, "see 416 of 6-13-08." (*Id.*). The record does not

---

[1] When Plaintiff had her hearing, she lived in Michigan, and she appeared at the hearing by video conference before an ALJ in Stockton, California. Both parties have cited to Ninth Circuit social security law in their briefings. (Docs. 20, 24). To the extent that either party could have claimed that Sixth Circuit law should apply because Plaintiff was a Michigan resident when she filed her claim, the argument has not been raised and is therefore waived.

1   contain a form SSA-416 (Medical Evaluation) or any document completed on June 13, 2008.
2   It does contain a form SSA-448 (Request for Medical Advice) that was completed on June
3   10, 2008, in which the examiner noted that Plaintiff can cook meals and do laundry but "has
4   problems walking, kneeling, reaching, standing, bending, squatting, and lifting," and that her
5   complaints "appear to be partially credible." (R. at 267). On October 15, 2008, she was seen
6   by Dr. Ashraf Mohamed, who diagnosed her with lupus and wrote that she experienced back
7   pain when walking on tiptoe. (R. at 323–24). On August 6, 2009, Wayne Gorman, a non-
8   physician therapist, prepared a Mental Capacities Evaluation, based on his therapy with
9   Plaintiff from January 2008 through August 2009. (R. at 435–41). On August 12, 2009, Dr.
10  Mustapha Mallah, who had been seeing Plaintiff since April of 2008, wrote that her pain was
11  "severe," her weakness and fatigue were "moderate," her complaints were credible, she had
12  suffered a "CVA" (a cerebral vascular accident, or stroke) in May of 2009, and that she could
13  not perform sedentary or light work. (R. at 329–31; 453–56).

14       At her hearing, Plaintiff stated that she had not cooked for three months prior to the
15  hearing, that her hands "crimp up" when she tries to do housework, that she spends six to
16  eight hours a day lying down, that she sleeps only two hours a night, that she cannot lift a
17  gallon of milk, that she uses a cane to walk, and that she can only sometimes bathe and dress
18  without assistance. (R. at 67–72). Susan Moranda, a vocational expert ("VE"), also testified
19  at the hearing. (R. at 80–86). The ALJ asked the VE to consider two hypothetical workers.
20  The first was a person who could lift twenty pounds occasionally and ten pounds frequently,
21  but could only perform work involving relatively simple instructions; the second was a
22  person who could not stand for more than two hours a day and was only capable of lifting
23  ten pounds occasionally. The VE provided job titles that either of the hypothetical workers
24  could perform in the Michigan economy. (R. at 81–84). Plaintiff's attorney asked the VE if
25  a hypothetical person with the physical limitations described in Dr. Bhardwaj's report, or the
26  mental limitations described in Gorman's report, would be able to perform any kind of work,
27  and the VE agreed that such a person could not. (R. at 85).

28       In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step

sequential evaluation for determining disability.[2] (R. at 26–35). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 28). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of systemic lupus erythematosus and dysthymic disorder. (*Id.*). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Administration's listed impairments. (R. at 29). Here, the ALJ specifically considered whether Plaintiff's lupus qualified as an impairment under Listing 14.02, but found that none of the medical evidence documented "listing-level severity." (*Id.*).

At that point, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[3] concluding that Plaintiff could perform light work. (R. at 30). Specifically, the ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[3] An RFC documents what work-related task a claimant can perform despite the limitations caused by her impairments. *See* S.S.R. 96-8p (July 2, 1996).

frequently, and could stand, sit, and walk six hours during an eight-hour workday. The ALJ found that Plaintiff could only perform work involving simple instructions. The ALJ then determined at step four that Plaintiff did not retain the RFC to perform her past relevant work as a certified nurse assistant in a nursing home. (R. at 34). The ALJ therefore reached step five, where he determined that Plaintiff could perform a significant number of other jobs in the national economy that met her RFC limitations. (*Id.*). Given this analysis, the ALJ concluded that Plaintiff was not disabled. (*Id.*).

## DISCUSSION

### I.     Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

An ALJ cannot reject a treating or examining physician's uncontradicted medical testimony except based upon "clear and convincing reasons," but may reject contradicted testimony for "specific and legitimate reasons that are supported by substantial evidence in

the record." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Before rejecting subjective testimony by a claimant about the severity of her symptoms that is medically supported, an ALJ must offer "specific, clear and convincing reasons for doing so." *Moore v. Commissioner*, 278 F.3d 920, 924 (9th Cir. 2002) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

**II.     Analysis**

Plaintiff argues that the ALJ erred by: (A) failing to evaluate the opinion evidence properly (Doc. 21 at 10–15), (B) improperly evaluating Plaintiff's subjective complaints and credibility (*id.* at 15–18), and (C) posing an incomplete hypothetical to the vocational expert (*id.* at 18–20). These claims will be discussed in turn.

**A.     Evaluation of Opinion Evidence**

An ALJ may reject the opinion of a treating physician in favor of a non-treating physician only "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence," stating an interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In this process, an ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self reports that have been properly discounted as incredible." *Tommasetti*, 533 at 1041 (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). The ALJ rejected opinions by those who treated Plaintiff both with regards to physical and mental symptoms; the two will be discussed independently.

**1.     Physical symptoms**

The ALJ discounted the treating physicians' opinions regarding Plaintiff's physical condition by relying heavily on the fact that Plaintiff underwent a series of MRI tests in July of 2009, and that the MRIs "revealed no degenerative changes of the claimant's hips, and normal results for her cervical spine and lumbar spine." (R. at 31, 431–34). The MRIs were ordered by Plaintiff's treating physician, Dr. Bhardwaj, in June of 2008 and July of 2009; the reasons for the exams are listed as "disc herniation" and "OA" (osteoarthritis). (*Id.*). The ALJ mentions the MRIs three times, and on two occasions it is the only medical evidence upon

1 which he relied to discount the treating physician's claims. (R. at 32 ¶ 3, 33 ¶2). Plaintiff counters that her "primary physical conditions, lupus and fibromyalgia, are not orthopedic or spinal disorders" and that an MRI would not detect them. (Doc. 21 at 11). *See, e.g.*, *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("There are no laboratory tests for the presence or severity of fibromyalgia.").

In his reply, Defendant does not mention the MRI, stating merely that the ALJ "gave specific and legitimate reasons supported by substantial evidence in the record for not affording the treating physicians' opinions significant weight." (Doc. 24 at 8). Defendant does not otherwise suggest that lupus or fibromyalgia would be detected by an MRI. Defendant offers no reason why the MRI, ordered by Dr. Bhardwaj to diagnose other conditions, should be used to discredit Dr. Bhardwaj's diagnosis of lupus and fibromyalgia, particularly when those diagnoses were made after Dr. Bhardwaj knew the results of the MRIs. (R. at 330–36). The MRI results do not comprise "specific and legitimate reasons" supported by "substantial evidence in the record" adequate to discount the diagnoses of Dr. Bhardwaj and Dr. Mallah. *Carmickle*, 533 F.3d at 1164. *Cf. Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("Dr. Jacobson followed Claimant's progress for three and a half years, referred her to several specialists and conducted extensive lab testing to rule out other possible illnesses."). Defendant notes that Plaintiff was treated by Drs. Baddigam and Mohammed, and states that their opinion findings "clearly controverted" those of Dr. Bhardwaj and Dr. Mallah. (Doc. 24 at 8). As discussed below, this statement is true with regards to Plaintiff's mental state, but neither Dr. Baddigam nor Dr. Mohammed contradicts the diagnosis of lupus, or makes any statement regarding the severity of Plaintiff's physical symptoms. (R. at 268–70; 323–24). Likewise, Dr. Khan prepared only a psychiatric review and an MRFCA, and made no evaluation of Plaintiff's physical condition. (R. at 272–85).

The only contradicting medical evidence with regards to Plaintiff's physical condition is the report of Dr. Joh, a non-examining state physician, who stated that Plaintiff can lift ten pounds frequently and twenty pounds occasionally. (R. at 292). He wrote that he based this opinion on "416 of 6-13-08," a document that is not in the record. (*Id.*). To the extent that

- 7 -

1 Dr. Joh's statement may be construed to mean that he was relying on the June 10, 2008 form
2 SSA-448, that form notes that Plaintiff can cook and do laundry, and states that she "has
3 problems walking kneeling, reaching, standing, bending, squatting and lifting." (R. at 267).
4 The fact that Plaintiff once reported that she could cook and do laundry[4] is not a "specific and
5 legitimate" statement that the person can lift ten pounds frequently and twenty occasionally.

6 Aside from the MRI, the ALJ stated that he discredited her treating physician based
7 on the fact that the same physician had conducted a nerve conduction study and found that
8 her nerve conditions were "within normal limits" in May of 2008. (R. at 31). It is not clear
9 why such a result is inconsistent with the conclusions of the doctor who conducted the study
10 regarding the impact of her lupus on her ability to lift objects. The ALJ stated that Dr. Joh's
11 report was supported by the fact that Plaintiff's treating physician noted that Plaintiff had
12 increased range of motion in her lower extremities after "a lumbar facet and sacroiliac joint
13 block injection" in January of 2009. (R. at 31). This improvement took place nearly six
14 months after Dr. Joh's report, so cannot be used to support his conclusions that Plaintiff
15 could lift twenty pounds occasionally and stand for six out of eight hours on a work shift. (R.
16 at 317).

17 The final reason that the ALJ offers for rejecting Dr. Bhardway and Dr. Mallah's
18 reports is that they "relied on the claimant's subjective complaints for their opinions, but did
19 not indicate that they relied on any objective medical evidence." (R. at 31). In fact, Dr.
20 Bhardway based the diagnosis on "polyarthritis, loss of hair, deep vena thrombosis, positive
21 anticardcolipin antibodies, positive antinuclear antibody and positive double-stranded DNA."
22 (R. at 332). These symptoms, in particular hair loss, the presence of antibodies, and positive
23 double-stranded DNA, represent objective factors rather than merely subjective complaints.
24 The fact that Plaintiff's pain and fatigue were self-reported does not offer a substantial reason
25 to discount her treating physician's diagnosis when it was accompanied by objective medical

---

[4] At the hearing, which took place in August of 2011, she stated that she has not been able to cook for the past three months. (R. at 67).

- 8 -

evidence. *Cf. Reddick*, 157 F.3d at 726 ("Although CFS is accompanied by symptoms . . . which Claimant manifested, the presence of persistent fatigue is necessarily self-reported.").

The ALJ's rejection of Plaintiff's treating physicians' physical diagnoses was not supported by substantial evidence in the record.

### 2. Psychological Symptoms

Plaintiff claims that the ALJ erred by discounting the opinion of her therapist, Mr. Gorman. (Doc. 21 at 14). Plaintiff notes that although Mr. Gorman is not an "acceptable medical source," he is an "other source" under SSR 06-3p. (Doc. 21 at 14). As such, although his opinion cannot establish the existence of an impairment, his opinion "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 (S.S.A. 2006). The ALJ credited Dr. Khan, who examined Plaintiff and found that she "does not appear sad or depressed," and diagnosed her with "Dysthymic disorder." (R. at 275–84). He further credited Dr. Baddigam, who also diagnosed her with Dysthymic disorder and provided a guarded prognosis, noting that her thinking process was well-organized and that her "affect is appropriate to the thought content, and her mood is euthymic." (R. at 269). Although the regulation permits an ALJ to rely on the opinion or an "other source" to determine the severity of an impairment, it does not require it, and the ALJ correctly noted that Mr. Gorman's opinion was "inconsistent with the record as a whole" including the opinions of two medical sources that personally evaluated Plaintiff. (R. at 32). The ALJ's decision to credit Dr. Baddigam and Dr. Khan is supported by substantial evidence in the record and is therefore affirmed.

### B. Evaluation of Plaintiff's Subjective Complaints

In evaluating a claimant's credibility, "the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in the testimony," but "must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (internal quotations omitted). When a claimant's testimony is medically supported, the ALJ must also offer specific, clear and convincing reasons before he "can

1 reject the claimant's testimony about the severity of his symptoms." *Moore v.*
2 *Commissioner*, 278 F.3d 920, 924 (9th Cir. 2002). This standard is "the most demanding
3 required in Social Security cases." *Id.* Here too, the Court will discuss Plaintiff's physical
4 and psychological symptoms independently.

### 1. Physical symptoms

At her hearing, Plaintiff stated that she had not cooked for three months prior to the hearing, that her hands "crimp up" when she tries to do housework, that she spends six to eight hours a day lying down, that she sleeps only two hours a night, that she cannot lift a gallon of milk, that she uses a cane to walk, and that she can only sometimes bathe and dress without assistance. (R. at 67–72). The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 33).

The ALJ cited a number of reasons for discrediting Plaintiff's testimony regarding her physical ailments. He first relied upon the MRI in 2009 that showed Plaintiff had no damage to her hips, cervical spine, and lumbar spine. (R. at 33). As noted above, Defendant offers no argument to suggest that the MRI has any bearing on the diagnosis or severity of Plaintiff's lupus. The ALJ stated that Plaintiff's testimony at her hearing that she needed a cane was not credible because Plaintiff's treating physician noted in September of 2008 that an assistive device was not required for ambulation. (R. at 301). That same treating physician prescribed a cane for Plaintiff eight months later, so the earlier diagnosis cannot be used to discredit Plaintiff's hearing testimony. (R. at 342). The ALJ relied in particular on Plaintiff's Function Report of April 10, 2008, during which she noted that she cooks breakfast for her daughters and sends them to school. (R. at 177). The Ninth Circuit discourages courts from relying on the fact that claimants can perform domestic tasks to discredit their subjective testimony regarding their symptoms. *See Reddick*, 157 F.3d at 722. That same report states that after the children leave, Plaintiff will "Lay down from exhaustion" and not get up until

- 10 -

1  "children come home from school." (R. at 177). Moreover, Plaintiff did not testify that she
2  had never been able to cook for her children; she testified that because of the "crimping" in
3  her hands, she had been unable to cook for the last three months as of the time of her hearing.
4  (R. at 67).

5  Finally, the ALJ discredited Plaintiff's testimony as to the severity of her condition
6  because "she takes care of four children between the ages of four-years-old and twelve-years-
7  old, which can be quite demanding both physically and emotionally." (R. at 33). The Ninth
8  Circuit has written that "[s]everal courts, including this one, have recognized that disability
9  claimants should not be penalized for attempting to lead normal lives in the face of their
10 limitations." *Reddick*, 157 F.3d at 722. Plaintiff's earlier report that she gets her children
11 ready for school before lying down from exhaustion until they come home does not
12 contradict her hearing testimony and is not "inconsistent with a need to lie down up to ten
13 hours a day." (R. at 33). The ALJ improperly discredited Plaintiff's testimony regarding the
14 severity of her physical symptoms.

15         **2.     Psychological Symptoms**

16 The ALJ discounted Plaintiff's claim that she had symptoms of depression every day,
17 her testimony regarding frequent crying spells, and her testimony that she does not like to be
18 around people and isolates herself. (R. at 33). As with the testimony of her treating
19 physicians regarding her psychological symptoms, the ALJ stated that the claims were of
20 diminished persuasiveness in light of the fact that physicians who had examined her provided
21 less severe diagnoses. (R. at 33, 275–84). For purposes of giving a lower regard to Plaintiff's
22 testimony as to her psychological limitations, the ALJ adequately "identif[ied] what
23 testimony is not credible and what evidence undermines the claimant's complaints." *Lester*
24 *v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ's decision not to credit Plaintiff's
25 subjective statements regarding her psychological state was supported by substantial
26 evidence in the record.

27         **C.     Hypothetical Questions Posed to the Vocational Expert**
28 Plaintiff argues that the ALJ's hypothetical question to the VE was improper because

- 11 -

1   it failed to account for Dr. Khan's assessment that Plaintiff has a "moderately limited" ability
2   to accept instructions and respond appropriately to criticism from supervisors. (Doc. 21 at
3   22).[5] The ALJ asked the VE to suggest jobs that a person who, "[b]ecause of depression
4   would [be] limited to work involving relatively simple instructions." (R. at 81). Plaintiff
5   argues that limiting work to relatively simple instructions does not account for her
6   moderately limited ability to accept instruction. (Doc. 21 at 22). "Hypothetical questions
7   posed to the vocational expert must set out *all* the limitations and restrictions of the particular
8   claimant." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (emphasis in original)
9   (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Nevertheless, the Ninth
10  Circuit has acknowledged that summarizing multiple limitations in an MFRCA with a single
11  limitation in an RFC can be appropriate in some circumstances. For example, in *Stubbs-*
12  *Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008), multiple doctors noted that a
13  claimant operated at a "slow pace" or that the claimant was moderately limited in her ability
14  "to perform at a consistent pace without an unreasonable number and length of rest periods."
15  The ALJ incorporated these comments, along with others, into an RFC that found "the
16  claimant retains the residual functional capacity to perform simple, routine, repetitive
17  sedentary work, requiring no interaction with the public." *Id.* Here, the MRFCA noted that
18  Plaintiff was moderately limited in her ability to carry out detailed instructions, her ability
19  to maintain attention and concentration for extended periods, and her ability to accept
20  instructions and respond appropriately to criticism from supervisors. (R. at 286–87).
21  Summarizing these limitations by finding that the claimant was "limited to work involving
22  relatively simple instructions" accounted for these limitations. *See also Landa v. Astrue*, 283
23  Fed. Appx. 556, 558 (9th Cir. 2008) (finding that substantial evidence supported an ALJ's
24  determination that claimant's "depression was not a sufficiently severe non-exertional
25  limitation that required the assistance of a vocational expert" when the claimant had been

---

[5] Plaintiff also claims the questions were inappropriate because they reflected the errors alleged and discussed above, which need not be re-evaluated here.

- 12 -

1  found "moderately limited" in two of the twenty categories on an MRFCA).

2  The hypothetical posed by the ALJ did not improperly ignore the findings on Dr.
3  Khan's MRFCA.

## III. Remedy

The Court has found that the ALJ improperly rejected medical testimony as to Plaintiff's physical symptoms and Plaintiff's own testimony as to the severity of those symptoms. It has found that the ALJ made no error involving Plaintiff's psychological symptoms. The Court will therefore vacate the ALJ's decision with regards to the physical symptoms. Having decided to vacate the decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

Here, the ALJ failed to provide legally sufficient reasons for rejecting the medical evidence regarding Plaintiff's physical capacity. At the hearing, Plaintiff's attorney asked the VE if a hypothetical individual subject to the limitations noted in Dr. Bhardwaj's evaluation would be able to perform work that exists in significant numbers either in the local or the national economy.[6] (R. at 84). The VE responded, "I don't believe so because it appears that would be less than the full range of sedentary work." (*Id.*). Were Dr. Bhardwaj's improperly discounted testimony credited, therefore, the ALJ would be compelled to find that Plaintiff could not perform work available in significant numbers in the national economy. Thus, it is "clear from the record that the ALJ would be required to find the claimant disabled," and

---

[6] The transcript renders Dr. Bhardwaj's name phonetically as "Dr. Bardwarsh." (R. at 84). It is clear from the context that the parties are referring to Dr. Bhardwaj.

- 13 -

1  there remain no "outstanding issues that must be resolved before a determination of disability
2  can be made." *Smolen*, 80 F.3d at 1292. Under these circumstances, the Court will remand
3  for a computation of benefits.

## CONCLUSION

The ALJ improperly discredited Dr. Bhardwaj's and Dr. Mohammed's medical evaluations and Plaintiff's testimony regarding the severity of her symptoms. Since, were that evidence properly credited, the ALJ would have been required to find Plaintiff disabled, the case is remanded for a calculation of benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is vacated.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for an award of benefits.

DATED this 22nd day of June, 2012.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge